15-7053 Nienves Rocha as the personal representative of the estate of Oscar Rocha, deceased, Appellant v. Brown & Gould, LLP, NL. Ms. Insling for the Appellant, Mr. Schramm for the Appellate. Good morning and may it please the Court. Good morning. The threshold issue that the Court must decide in this appeal is one of the statute of limitations. And the issue that the Court must decide is whether the District of Columbia's three-year statute of limitations that governed Ms. Rocha's legal malpractice claim was told by the defendant's continuous representation of her through June 28, 2011. In the limited time that I have here today, I think it's important for the Court to focus on several documents in the record that I think are dispositive of the issue before the Court. Are you talking about count one? Yes. I'm sorry. Count one? All of the counts in the complaint.  The key document is in the appendix at page 279, which is a letter that Defendant Brown wrote on May 20, 2011. And that's to remember where we are on May 20, 2011. Mr. Brown and Defendant Littman were retained by Mrs. Rocha on February 10, 2009 to represent her in an asbestos case. A case was filed in the District of Columbia Superior Court. Discovery proceeded. Evidence of exposure to asbestos was induced in the District of Columbia, Virginia, as well as in interrogatory answers as evidence of exposure in Maryland. Georgia Pacific filed a motion for summary judgment at the close of Discovery, asserting that the case was time-barred under the District of Columbia's special statute of limitation that pertains to asbestos claims, D.C. Code 12.311, which essentially says that an asbestos case has to be brought within one year when an asbestos victim becomes disabled from asbestos disease. And in Mrs. Rocha's case, it was her husband, Oscar, who was diagnosed with mesothelioma, a cancer only caused by asbestos, on February 22, 2006. And his statute of limitations in the District of Columbia would have expired on February 22, 2007. So the point that Georgia Pacific made was that, that Mr. Rocha's case, his survival action brought by his wife, was time-barred. And the Superior Court granted that motion on January 10, 2011. An appeal was immediately filed by Mr. Brown in the D.C. Court of Appeals, the D.C. Court of Appeals Chief Judge Washington, in surveying the record, noted that there was a defendant who was still remaining in the Superior Court action, Bond X, issued a show-cause order, and directed that the parties address this issue of whether the Superior Court judgment was final. Briefing was had, and finally the appeal was dismissed as untimely. And Mr. Brown and Mr. Littman returned to the Superior Court, obtained an order dismissing Bond X, and a final order, and then it brings us to this point in time, where all of these events that were taking place occurred under the first retainer agreement that Mr. Brown and Mr. Littman had. And then the parties then reach a point where Mrs. Rocha needed to decide whether she would continue the case to proceed with the appeal and to have her Superior Court counsel, Mr. Brown and Mr. Littman, continue to represent her. And on May 20, 2011, Mr. Brown wrote to Mrs. Rocha and sent a letter to her by FedEx in which he says, at this point in time, he says, quote, this concludes our representation of you at the trial level in this matter. So what this letter shows is that throughout this period, from February 10, 2009 to May 20, 2011, Mr. Brown believed that he was representing her as he was under the terms of the first retainer agreement. Let me ask you this. Suppose you're right about the statute of limitations. The district court gave several other reasons for summary judgment on count one, right? That's correct. Okay. And one of them that I want to ask you about is that the defendant had moved for summary judgment on the grounds that a plaintiff hadn't established that their failure to file in Maryland was the proximate cause of her injury. That was one of the defendant's arguments. And the district court, and this is one of the reasons he granted summary judgment, was that the plaintiff had effectively ignored this argument and had therefore, quote, conceded the issue. And then here in your blue brief, it's not raised. So why isn't this issue forfeited and we can affirm on that ground alone? I did raise this issue in our opening brief as well as in our reply brief. Do you disagree about the district court's conclusion that it was conceded? I completely disagree with it. And I point the court, as I did in my opening brief, to pages 47 and 48 of the opposition brief that I filed in the district court, and I'll quote exactly what I said there. It comes at the end of the brief. I say this. Lastly, defendants make much of the fact that Amato, my expert, did not criticize Brown for it. What page are you on and which brief? This is pages 47 and 48 of the brief. It's document in the district court, document 43 filed. You're reading from the district court brief now? I'm reading from my district court brief, which I cite. Okay. And what about here? Pardon? What about here? Your blue brief here. Where do you make the argument here in the blue brief? I might have missed it. Just tell me where it is. I'm not sure on what page it appears. Why don't you find it for me now? I totally can see I may have missed it, but now's your time to show me that. Okay. I cite to it on page 19, footnote 35. Which says what? Is the reference. What does that say? And also on page 20. What does that say? What does that say? Actually, on page 20, I say this. Likewise, the B&G defendants and later the district court's contention that Mrs. Rocha had allegedly conceded judicial immunity of offense by purportedly not responding to their argument. That's a different issue. That is the issue. Is that the proximate cause question? That is the proximate cause question, yes, because it's interwoven with the judicial immunity defense. That's what I was trying to read to you. Why is that? I'm not sure I understand that. I thought the proximate cause argument was that there was no evidence that the defendants were the ones who produced the product that allegedly caused the injury. That's not an issue here about product identification. It's not? That's the argument. How could you possibly win without it? I don't understand. Who in Maryland would you sue successfully? Who has the – if you couldn't win in Maryland, then there's no liability for not filing it. No, we make two arguments, and it's throughout the brief, that the wrongful death claim was actionable in Maryland under the barring statute without proof of exposure to asbestos in Maryland. There are two different claims here. There's a survival action, which you're correct, under the barring statute required proof of exposure in Maryland. Yeah. We concede that. Yeah. But what Mr. Amato, the expert in this case, said that the barring statute makes a specific exception to wrongful death cases and that wrongful death cases in Maryland do not require proof of exposure in Maryland. The issue of whether, for example, there was personal jurisdiction over all of these defendants in the case was conceded by Mr. Brown in deposition. He could have sued them in Maryland. Jurisdiction in terms of personal jurisdiction over the asbestos manufacturing defendants was not an issue. So if your client had never been in Maryland and had never worked with asbestos in Maryland, he could still sue successfully in Maryland? Yes. And I'll tell you, and it's interesting, if you look at the Maryland barring statute, it carves out an exception. Tell me what it says. Well, it's a lengthy statute. Tell me what the relevant part of it says. I'll read it to you. If a cause of action against a manufacturer or seller of a product for personal injury allegedly caused by a defective product arose in a jurisdiction, and by the laws of that jurisdiction, the cause of action may not be maintained by reason of lapse of time, and action may not be maintained in this state, except in favor of one who is a resident of the state. It goes on to say application of this section. What did you say again in the last part, the last few words? Except in favor of one who is a resident of this state. So, in other words, if Mrs. Rocha had lived in Maryland and her husband had been exposed to asbestos only in D.C., she could bring an action under District of Columbia law in Maryland. But she didn't live in Maryland, did she? No, she didn't. She did? She did not. But she did not live in Maryland. But I'm simply saying that Maryland, under this statute, for example, even where there is no exposure in Maryland, would permit an action. If she were a resident of Maryland. That's right. She wasn't a resident. No, but the statute goes on to say this. This section may not be applied to a cause of action that was for wrongful death described under Section 3, Subtitle 9 of this article. So it carves out two exceptions. It carves out an exception for residents of the state of Maryland, and it carves out an exception for wrongful death claims. So it was possible to bring a wrongful death claim, based on District of Columbia law in Maryland, the day that Mrs. Rocha walked into Mr. Brown's office, because there was still 12 days left. Twelve days left of Maryland's discovery statute of limitations. Since Maryland has a three-year statute of limitations discovery statute for asbestos claims. But I think the point, too, that the trial court, in terms of this waiver issue, because it's an important issue, and I agree completely that it is. And the court, I think, was talking, suggested that we had conceded the judicial immunity issue in the case which we had. And this is the quote that I wanted to read to you. It said, Lastly, defendants make much of the fact that Amado did not criticize Brown for his affirmative decision to file in both Virginia and District of Columbia. They somehow postulate that from that lack of criticism, from his decision to still file, and consequently his decision, if he even entertained one at all, not to file in Maryland for all exercises of professional judgment that are not subject to second-guessing by an expert. That is a total distortion of Amado's opinions. Okay, we've got it. You're well over time. Thank you. You're out of time. We'll give you a minute on rebuttal. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. My name is Jonathan Schraub. I represent the appellees Brown and Gould and Daniel Brown. Your Honors, there are multiple, multiple independently sufficient bases to affirm the decision of the district court. But I do want to say one thing to begin with with regard to the question Judge Sentell asked. The response of Mr. Enslein was that it was possible. His argument is that it was possible to bring a suit in Maryland. We, frankly, disagree with that. The thrust of that second so-called accepting paragraph can be read differently, I think, than Kevin's first. The point is that there was disputed law in all three jurisdictions, in Maryland as to how they would apply their own statute to the D.C. borrowing statute, in D.C. as to how they were going to apply the D.C. statute of limitations after the opinions in Henkel and Guyer, which indicated that they would not be used to limit the time and that there would be a three-year time period, and in Virginia as to whether or not the statute of repose would apply in connection with whether asbestos becomes a fixture. So there were questions abounding in this. But the most Mr. Enslein can ever say is that it was possible to bring a suit in Maryland. This suit is not about our suit. This suit here is not about what was or wasn't possible. This suit is whether or not the standard of care mandated that you must bring a suit in Maryland on pain of being hauled into court for legal malpractice, not whether it was possible under some convoluted argument that somebody might make, somebody else might disagree with, and an informed judgment, a professional judgment would be made, as the record undisputedly shows, Mr. Brown did, considering all of the pros and cons of each jurisdiction. And we laid them out in our brief, and Mr. Brown laid them out in his affidavit below, which is the supplemental appendix, the multiple pros and cons of each jurisdiction. And having decided that and faced with the fact that there was no evidence of exposure in Maryland, that nobody lived in Maryland, he decided it was best to bring the suit in D.C., bring a backup suit in Virginia, fully expecting that D.C. would abide by the existing guiding precedent, which wasn't binding, but it was guiding, as to how the D.C. asbestos statute would be interpreted, and it would be interpreted liberally and in favor of a claim such as Mrs. Rocha's. It did not turn out that way. The D.C. Court of Appeals did not view the statute that way. But, of course, we all know that a lawyer is not liable for malpractice based upon the failure to predict how a court of appeals will ultimately decide a previously undecided issue of law. In this case, this case dispositively goes off all of the counts. The first count and the third count go off on statute of limitations. Why count three? I'm sorry? Why count three on the statute of limitations? The legislative count? Yeah. Because damage occurred in that count, whatever damage they allege, occurred in January 2011 when the D.C. Superior Court advised Mrs. Rocha, actually in December 2010, orally in court where she was present, but then by order in January of 2011. What about the application of the continuous representation rule there? The continuous representation, well, first of all, with respect to the legislative. Why didn't that have told it? No, because continuous representation doesn't apply to a straight negligence claim. The claim in count three is not a professional liability claim. It's a straight north and south negligence claim under the theory of good Samaritan activity, volunteer undertaking. There is no continuous representation rule with respect to that. Continuous representation only applies to professional liability. I'm not sure why not. Just explain to me again why it wouldn't apply. Because the continuous representation rule. It was the same matter. You can argue it's the same matter. Well, it was and it wasn't. Well, let's assume it was. Let's assume the matter being recovering for the death of plaintiff's husband. That's the matter. If you interpret the matter that broadly, but then you go back to the situation that there was no agreement to do this. This was done, the theory the plaintiff finally advanced after hopscotching through 100 theories, the theory that was finally advanced, not in a pleading, but in deposition by this expert, was that, gee, this isn't anything the plaintiff has already said it was. This isn't the written contract. This isn't the oral contract. This isn't promissory estoppel. This is none of the theories that were advanced by the plaintiff, his expert says. What this really is in his deposition is voluntary undertaking. Good Samaritan. And that is where this finally came to rest. There is no precedent that the continuing representation rule applies to a claim of voluntary undertaking. There was no continuing representation with respect to voluntary undertaking. It was done, finished, and complete in January when the D.C. Superior Court said that there was no retroactive application of the statute. There was nothing more to continue to do. There was no more representation to be had on that. The damage was done. At that point, the statute of limitations on that count begins to run. It begins to run. And it obviously expired three years later, well before the suit was filed. Isn't there also a rather unusual theory of approximate cause to make them liable for this, even if the statute hadn't run? There is no theory. He said there's no theory of approximate cause because Mr. Amato The harm results from the failure of a legislative body to take action. And the legislative body is not under the control of the defendants. That's correct. And Mr. Amato said it. We've got that. It's in our brief. Mr. Amato said that Mr. Brown has no control. Has no control over what the legislative body may or may not do if confronted with a proposed statute that they were never confronted with. He says that. Suppose I, this is just a hypothetical. Suppose I think that the continuing representation rule does apply. Just a hypothetical. Just a hypothetical. I promise. Then the question is, the district court says, well, there was no physical damage. Yes. Right? Yes. But, you know, I read those cases that are cited. I think Hainesworth, there's a whole bunch of them, which, and this is where the D.C. Court of Appeals cites Restatement 323. But they never say that's the only basis for recovering under whatever this theory is. In other words, they don't say physical damage, physical harm is the only basis for it. And I don't know of a case in D.C. that does say that. Do you? That physical damage is required under Section 323? Do you know of a case that the D.C. Court of Appeals has cited where it has actually rejected economic harm under this? No, I don't think so. Yeah, I couldn't find any. I don't think so. This court, not this court, excuse me, this circuit in the SEIU case, the district court, has said just that. District court. The district court. We haven't. No, you have not. This is a wonderful opportunity. So maybe if we get to that, it's the kind of issue that should be certified. Oh, I don't think so, Your Honor, because there is plenty of indication, as the SEIU case itself pointed out, there's plenty of indication of how D.C. would rule. How do we know how it would rule? You don't know for certain. This question, we don't. You don't. All they've said is they've cited 323. 323 says physical harm. But we have no case where they've rejected economic harm. No, but again, Your Honor, if the statute, if not the statute, if the restatement, which has been, if not officially adopted. But it hasn't been officially adopted. That's the whole point. No, it hasn't been officially adopted, but it has been referred to favorably in numerous decisions. And what does it say on the subject? What does it say on the subject? The restatement provision says, in its plain terms, that you must have physical harm, which is how the SEIU case came out. Why would it be presumed that if you're going to follow the restatement, and certainly there's no reason to believe the D.C. Court of Appeals wouldn't because they have quoted it favorably on a number of occasions. But that's because they haven't had a case involving economic harm. No, but that's true, Your Honor, but why would it possibly be assumed that they would go against the plain wording of the statute? I'm not on the D.C. Court of Appeals. I have no idea. There are many states, other states, that have extended this to economic harm, and D.C. just hasn't had a case. So how would we decide it other than to guess? We would just say, okay, they cited 323 in physical harm cases, therefore physical harm is the only basis. I don't think that works. I'm not sure this Court has the authority to interpret D.C. law that way. Well, I think the Court does have the authority to make a reasonable estimation. Yeah, under Erie. Yes, unless it believes it can't. Under Erie, we have the obligation to do that. As it happens, we're fortunate enough to have a certification statute when we need one. Okay. But having been a judge in a different court where we had states that didn't have those, you have to make Erie doctrine guesses or conclusions without being able to say those. Those are best estimations where it's possible to do so. Okay. Thank you. May I just say, in my head, I have to argue for everybody. There are no claims made at all against Mr. Lippman. His name is just thrown into this thing, and he isn't really even briefed by this court, Lippman, D.A., so there's no basis to not affirm for Arcoa Pelli. Thank you. Okay. Mr. Inslee, you were out of time, but you can have one minute if you'd like. With regard to the last topic, does your claim in the malpractice count depend in any way on whether the husband was exposed to asbestos in Maryland? No. Okay. In his testimony and in his report, that it was a breach of the duty of care for Mrs. Brown and Lippman not to file in Maryland, that when the role of their attorney And let me just follow up on that because Brown and Gold didn't find out that there was a possibility that the husband was exposed to asbestos in Maryland until October of 2014. Correct. During the deposition of the son. There was, Mr. Brown knew that Oscar Roker had worked in Maryland in the early 70s doing carpentry work, which was a time when he interviewed, that he had worked for Maryland-based employers in the early 70s as a carpenter, and that was a period of time in which asbestos was being used routinely in the types of materials that he was working with. I thought the wife filled out a questionnaire that did not mention that. That's right, but in the interview, and I questioned Mr. Brown about this pretty closely in his deposition, he acknowledged that in the interview, and it's in his notes that I questioned him about, there are two Maryland-based employers that Mr. Roker worked for. But your claim doesn't depend. No, it doesn't, but from a factual standpoint. I hate to extend, but I'm going to do it anyway. What do you see as the elements of this voluntary undertaking claim? When one undertakes to perform an activity for an individual, in this case, Mr. Brown undertook to get the law changed in DC to make his client's claim timely. He drafted an extensive memorandum. I asked you about the elements. And the elements is the failure to exercise reasonable care in carrying out that activity, causing damage. And what is it that you say is the failure to exercise? Well, first, identify the undertaking and then tell me the failure. The undertaking was to draft and propose legislation to the DC City Council to amend 12.311 to make Mrs. Roker's claim timely. And what he did was draft an extensive memorandum plus propose two different bills. And it's in the record, in which he makes specific reference to Mrs. Roker's case, saying if this law isn't changed, Mrs. Roker's case is going to be dismissed on summary judgment. And the failure there was not to include in his extensive memorandum to City Council the idea that if you're going to pass this bill to help Mrs. Roker, please put a, that the statute must have a retroactive provision. This court and the Wesley Theological Seminary considered the act that created this statute and whether the use of a retroactive provision was constitutional. And the court held that it was. So there was a roadmap. Okay. And what's your response to counsel's argument that the, that the, that the voluntary, that the undertaking to get the DC law changed was not part of the retainer, not part of any oral agreement. It was just completely separate. That's true. And is therefore barred by the statute of limitations. Well, this, this, this is, Mr. Brown is acting as Mrs. Roker's lawyer in this process. It's part of the representation of her. To say that. Is it a voluntary undertaking or is it part of the contract of representation? It wasn't part of the, he had no obligation under the contract that she, she signed to do what he did. So it's not part of his contracted representation. No, but he, but once he undertook, once he took, undertook, once he voluntarily undertook to do what he did, then, then a tort duty applies. And a question of. It's a tort duty. So it would not be affected by the continuing representation theory. Because he's doing this with his hat on as Mrs. Roker's lawyer. He's acting as for lawyer beyond perhaps. Aren't those two different stools? Either he's acting as the lawyer or he is voluntarily. No, I think he's doing two things. One that's subject to the contract that he agreed to do in the contract. And then beyond when he, he said, I'm going to do more. But I'm acting as your lawyer and doing it. He says that essentially in the memo that he sends to the city council. And it would make the whole point of the continuous representation rule is not to put a client in the position of in the middle of a representation to sue his lawyer for malpractice. Was this a contention thing? Yes. Okay. Thank you. Thank you, Your Honor. Thank you for your attention.
judges: Tatel, Sentelle, Randolph